■ In the Matter of the VILLAGE OF HARRIMAN et al., Appellants, v TOWN BOARD OF THE TOWN OF MONROE et al.,

Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the Town Board of the Town of Monroe, dated September 19, 1988, which approved the overall development plan for the Applecross Planned Unit Development, the petitioners appeal from a judgment of the Supreme Court, Orange County (Patsalos, J.), dated April 19, 1989, which dismissed the proceeding on the merits.

Ordered that the judgment is affirmed, without costs or disbursements.

In July 1986 the respondent Applecross Estates, Ltd. (hereinafter Applecross), pursuant to the Town of Monroe Zoning Ordinance, submitted an application to the town requesting approval of a planned unit development (hereinafter PUD) for the construction of 650 residential units. The proposed community would also contain a commercial shopping center and several individual office suites.

Simultaneously with the filing of the PUD application and pursuant to the New York State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), Applecross also submitted an environmental assessment form. Based on these submissions, the Town Board of the Town of Monroe designated itself as the lead agency and issued a positive declaration. Because the proposed action was seen as having potential impacts on the environment, the applicant was directed to prepare and submit a draft environmental impact statement (hereinafter DEIS). In response to specific concerns raised by the Town Board, Applecross was required to prepare a revised DEIS, which was subsequently accepted by the Town Board in August 1987.

On October 7, 1987, a public hearing was held by the Town Board on the DEIS. On December 9, 1987, the applicant was requested by the Town Board to submit a final environmental impact statement.

The SEQRA process conducted by the Town Board culminated in the issuance of a 79-page statement of "Lead Agency Findings" which addressed concerns raised by the petitioner Village of Harriman as to the impact the planned community would have on the village's water supply and level of traffic. The statement of "Lead Agency Findings" imposed numerous mitigation measures on Applecross to prevent the negative impacts feared by the village, including a reduction in the number of planned residential units from 650 to 450. The findings also required the developer to deposit $300,000 in a fund which would be used to supply water to the village if its

water supply was adversely affected by the Applecross project. An elaborate monitoring system was to be established in order to determine whether the village's water supply was in fact being so affected by the pumping of water at Applecross.

After additional public hearings were held, the Town Board approved the over-all development plan for Applecross on September 19, 1988.

The Village of Harriman and its Mayor brought this proceeding challenging the Town Board's determination. In the petition, the village claimed for the first time that on one instance, the running of interference tests by Applecross interfered with one of its wells to such an extent that no water could be drawn and that the well was required to be completely shut down for several days. Although the petitioner village did not perform any tests of its own concerning the impact that Applecross would have on water supply and the volume of traffic in the village nor submit any expert opinions, the petition nevertheless challenged the validity of studies done by Applecross which concluded that any impact would be minimal.

The Supreme Court correctly determined that the specific issue raised by the petitioner regarding the alleged failure of one of its wells during the running of well interference tests by Applecross was not properly before it. The record is clear that the petitioner Village of Harriman failed at anytime during the extensive administrative review process to raise this specific issue (see, Young Men's Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371). Accordingly, judicial review of this issue is precluded (see, Aldrich v Pattison, 107 AD2d 258).

The record before us reveals that Applecross undertook extensive studies which established that its planned development would have little impact on the water supply and volume of traffic in the Village of Harriman, that the village performed no tests of its own to refute the findings of Applecross, and that the Town Board required Applecross to undertake extensive and far-reaching mitigating measures, including the reduction by nearly one third of all the residential units in its proposed development. We conclude that the Town Board has taken the requisite "hard look" at the relevant areas of environmental concern and made a "reasoned elaboration" on the basis of its determination (see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417; Aldrich v Pattison, supra). Bracken, J. P., Kunzeman, Sullivan and Balletta, JJ., concur.